THE STATE *EX RELATIONE* SAWYER v. FORT.

1. Under the grant of powers by the constitution to the Supreme Court,
   that court can, under its writ of *certiorari*, inquire only as to the juris-
   diction of the inferior court (*Ex parte Childs*, 12 *S. C.*, 111); but the
   Court of Common Pleas, under the same writ issued by that court, can
   also review errors of law apparent upon the record, but not errors of
   fact.

2. In proceedings to eject a tenant at will holding over (*Gen. Stat.*, § 1818), findings of fact by the trial justice are final, and cannot be reviewed under any process.

3. Under a writ of *certiorari* issued by the Court of Common Pleas, that court has the power to determine, as matter of law, the construction of a written agreement; and having construed it as not creating the relation of tenancy at will, it has the power to restrain the order of the trial justice based upon a contrary construction.

4. Where a tenant rents land for a year, and agrees to surrender possession at the end of the year, but continues in possession for two years longer, it is not a tenancy at will; and, therefore, in such case a trial justice has no jurisdiction, under section 1818 of the General Statutes.

Before KERSHAW, J., Lexington, June, 1885.

The tenancy in this case was under the following agreement:

STATE OF SOUTH CAROLINA, County of Lexington.

These presents are known as such; Wm. Fort, now deceased, purchased a tract of land at sheriff's sale, sold as the estate land of George Sawyer, deceased, February 7th, 1870, and sold the same to George Sawyer and John W. Sawyer, on condition that they pay him the sum of twenty-five hundred dollars, with interest from 7th July, 1870, interest to be paid annually; and whereas the said George Sawyer and John W. Sawyer are unable to pay the said Wm. Fort for the same, we, whose names are signed to this instrument, make this agreement, and we desire to have a settlement without litigation or suits at law. I, H. Arthur Fort, administrator of the estate of Wm. Fort, do hereby certify and agree that if George Sawyer and John W. Sawyer will yield to the said H. Arthur Fort, as aforesaid, peaceable possession of all that piece, parcel, or tract of land, containing five thousand three hundred and thirty-eight acres of land (well understood that fifty-five acres are to be deducted, as I, the said H. Arthur Fort, have made to the said George and J. W. Sawyer a title for the same), the said George Sawyer and John W. Sawyer are to be released from said agreement on the payment of the sum mentioned with the interest thereon; and also they are to be released from the payment of the dower and the costs that Wm. Fort and H. Arthur Fort have paid for them in the case of Ann C. Murphy *vs.* W. Fort, George and J. W. Sawyer, and also the taxes for the same that has been paid by W. and H. Arthur Fort since the purchase of the land by W. Fort.

I, the said H. Arthur Fort, promise and agree to permit George and John W. Sawyer to stay upon the said land and cultivate all

or any portion of the land that is now cleared and under fence for one year; and that said George Sawyer and John W. Sawyer be permitted to cut, saw, and raft two hundred logs off of said land, and saw all logs that they have cut and on hand ready to be sawed and raft the same to Charleston. They are also permitted to remove and raft to Charleston lumber and timber that they have on hand sawed and cut up to this date; they, the said George Sawyer and John W. Sawyer, are permitted to saw and raft all the timber John W. Scofield may cut and haul to said mill within one month from date, and to saw all the timber John W. Scofield now has at said mill.

In consideration of the foregoing agreement, H. Arthur Fort, administrator as aforesaid, promises and agrees to withdraw a suit entered against George Sawyer and John W. Sawyer on an injunction, and that the suit shall proceed no further against them.

In witness whereof we have set our hands and seal, January 27th, 1882.

H. ARTHUR FORT,
GEO. SAWYER.

The trial justice reported his judgment and the reasons therefor, as follows:

Mr. Meetze had the defendant, George Sawyer, sworn, and endeavored to prove by him that he (George Sawyer) claimed to hold the land at that time as tenant of minor heirs of George Sawyer, sr., deceased, who had commenced an action against Col. Fort's heirs for the possession of this land. Mr. Graham, attorney for plaintiff, objected to this evidence or defence on the ground that the defendant was estopped from such defence because he was plaintiff's tenant, having entered under him, and had not surrendered his tenancy, nor had he ever notified plaintiff that he held adversely to him or for third parties, and therefore he was estopped from such defence, because it was contrary to public policy; and to support this objection he cited me to the following authorities, to wit: *Sedg. & Wait T. T. L.*, pp. 218–20, and authorities there cited; and also cited the following South Carolina decisions: *Syme* v. *Sanders*, 4 *Strob.*, 201; *Milhouse* v. *Patrick*, 6 *Rich.*, 352. Under the foregoing authorities I held that defendant was estopped from such defence, and accordingly ruled out his testimony.

Defendant then claimed that I had no jurisdiction of the case,

because the proper notice to quit had not been given to defendant by Mr. Fort.   I have already stated Mr. Fort's testimony, which was amply sufficient under the circumstances of this case, for Mr. Fort had notified him personally on more than one occasion, besides he had written him twice what he might depend on if he failed to make satisfactory arrangements about the rent, and Mr. Fort had never given him permission to remain on this land. *Davis* v. *Carew and Dawson*, 1 *Rich.*, 276.   Besides this, the Supreme Court, in the case of the *State* v. *Steuart*, decides that "A tenant who, after the expiration of the first year, continues to hold over without any new contract, except that implied by law, and refuses to give his note for the rent, as he had done in the first year, or to pay rent, is not entitled to the usual notice to quit. But the defendant endeavored to show that he claimed to hold the land for third parties, which conduct on his part waived the notice if he had not been notified legally (which is not the case)." *State* v. *Steuart*, 5 *Strob.*, 31.

The defendant did not pretend to claim any title in himself to this land, and his whole conduct showed that he never intended to pay any rent to Mr. Fort.   In a word, the defendant absolutely failed to show any cause why he should not be ejected from the said premises.

Therefore I passed an order directing that a writ of ejectment should issue against him, requiring the sheriff or any lawful constable of Lexington County to eject him from said premises; and on the same day I issued a warrant of ejectment against him, according to the statute in such case made and provided.

The Circuit decree was as follows:

In this case summary proceedings had been instituted on the part of the plaintiff to eject the defendant as tenant of the land described in the proceedings, under section 1818 of the General Statutes.   An order of ejectment was issued by the trial justice, and the defendant petitioned for and obtained a writ of *certiorari* issued to the Trial Justice Court, requiring that the record be brought into this court for examination on account of alleged defects in the same arising from the want of jurisdiction and power of that court to proceed under the act in question under the circumstances of this case.

33

In order to the exercise of the power attained by the Trial Justice Court, the act invoked by plaintiff, all the circumstances must concur, required by the act, before the court would have jurisdiction. The case must clearly fall within one or more of the specified instances in which the act authorizes the Trial Justice Court to proceed in this manner. The person sought to be ejected must either be the tenant at will of the premises, or must have gone into possession of the same under a contract of service as a domestic servant or common laborer, or otherwise. The act applies only to those classes of tenants and none other.

If the agreement introduced by the plaintiff is to be considered as characterizing the nature of the holding (and it is certainly the best and most reliable evidence appearing in the case), the defendant held under the terms of that paper for one year from January 27, 1882, and agreed to surrender the possession of the land at the expiration of that time. The defendant did not so surrender, but continued to hold and occupy the land during the years 1883 and 1884, and not until the present year was there any demand for possession or notice to quit; and it may well be doubted if the notice or demand here claimed to have been made was sufficient or would have been sufficient to terminate a tenancy, and to set in motion the machinery provided by the act for the ejectment of the tenant.

But conceding that the proceedings would have been regular in the case of a tenant at will, can the defendant be so regarded? He did not enter as tenant at will, but as purchaser under a valid contract. This is stated in the written agreement; certainly up to the date of that instrument he held in his own right and not as tenant. That agreement undertakes to set aside the contract of sale, and it was agreed thereby, that if the defendant would give up possession of the land, he should be released from all liabilities for the purchase money, and should occupy the premises for one year longer. Now, if we give to this agreement the same effect as if it were a lease of the premises for one year, and an acknowledgment of tenancy for a year, which is the most favorable view for the plaintiff, when he held on for another year, held again for another year, he became a tenant from year to year, and the terms of the act would not apply to such a tenancy.

If the agreement is not to be construed as creating a tenancy by contract for a year from its date, it must be a contract to surrender the possession of the land at the expiration of a year, and the incidents of a tenancy would not attach, but it would have been an agreement to be enforced by those courts having the power to enforce the performance of contracts. However, as I have said, it is most favorable to the plaintiff to construe it a contract for a tenancy for a year, which continuing, resolved itself into a tenancy from year to year, which can be terminated only in the modes applicable to such a tenancy. Any other view of the case appears to me impossible to be entertained.

To eject a farmer at this season of the year, and so deprive him of the fruits of his labor, would require the strongest and clearest case of right to sustain it. If the plaintiff, before the commencement of the new year, had served the defendant with notice to quit in proper time, there would have been no wrong done in ejecting him; it would have been the defendant's own wrong to have continued in possession and planting a crop upon the land would have been his own folly. But after having suffered defendant to continue year after year without notice to quit, the continuance in possession during the present year was a right of the defendant, of which he cannot be deprived by the method adopted in this case.

It is therefore ordered and adjudged, that the proceedings of the Trial Justice's Court herein are without jurisdiction, null, and void, and that the same and all proceedings thereunder be set aside.

From this decree the respondents, Fort and Harth, appealed on the following grounds:

1. Because it appeared upon the face of the return and petition that the proceedings in this cause were had in a matter pending, within the summary jurisdiction of Wm. T. Harth, trial justice, and that having jurisdiction of the subject matter and the person of the defendant, George Sawyer, the Circuit Judge *could not*, by the writ of *certiorari*, it is submitted, review the judgment or proceedings in said cause.

2. Because the Circuit Judge erred in holding and deciding that the defendant, George Sawyer, was a tenant from year to

year, and could not be ejected by a trial justice under section 1818 of the General Statutes.

3. Because it is respectfully submitted that the Circuit Judge committed a gross error in holding and deciding that, "To eject a farmer at this season of the year, and so deprive him of the fruits of his labor, would require the strongest and clearest case of right to sustain it."

4. Because the decision of the Circuit Judge shows that he set aside the judgment of Trial Justice Harth, *simply* because the defendant, George Sawyer, had planted a crop upon the premises from which the plaintiff sought to have him ejected.

5. Because the Circuit Judge erred in finding as a fact that the plaintiff, James C. Fort, had not demanded possession of the premises in question, or notified the defendant, George Sawyer, to quit until the present year, whereas the evidence offered by the plaintiff showed that the defendant had been notified *verbally* and in *writing* on *more* than *one* occasion *prior* to the present year, and Trial Justice Harth found as *a fact* that he had been *so notified*.

6. Because the Circuit Judge erred in holding "that the proceedings of the Trial Justice Court were without jurisdiction, null, and void."

7. Because the Circuit Judge had no right to review the facts found by the trial justice, nor had he any right to set aside the proceedings of the trial justice in said cause.

*Mr. George T. Graham*, for appellant.

*Messrs. Meetze and Muller*, contra.

April 1, 1886.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    In this case the appellant, J. C. Fort, obtained an order from W. I. Harth, a trial justice in Lexington County, to eject the respondent, Sawyer, from a certain tract of land, by proceedings under section 1818, General Statutes, providing for the ejectment of tenants at will and domestic servants.    Thereupon the respondent petitioned his honor, J. B. Kershaw, for the writ of *certiorari*, which was granted.    Upon

hearing the return to this writ, his honor holding that the proceedings before the trial justice were without jurisdiction, and therefore null and void, ordered the same to be set aside. The appeal questions the correctness of this order.

The appellant in support of the appeal contends, first, that the office of *certiorari* is not for the correction of errors of law or fact in the inferior court, but it is to test the jurisdiction of such court, and that this is its only office; second, that the errors complained of here did not involve a jurisdictional question in the Trial Justice's Court, and therefore, even admitting the complaint to be well founded, yet said errors are beyond the reach of *certiorari;* the questions involved belonging under the act to the trial justice, and without appeal. The case of *Ex parte Childs* (12 *S. C.*, 111), is relied upon to sustain the first position, and *O'Neale* v. *Fickling* (10 *S. C.*, 301), the second.

*Ex parte Childs* was a case within the original jurisdiction of this court, and what was said in that case, it must be remembered, was applicable to the office of the writ, as issued by this, the Supreme Court, under the authority of the constitution giving it power to issue certain writs. Art. IV., § 4. And it is true that the court there did hold that the only office of *certiorari,* when issued by the Supreme Court, was to confine inferior courts within their legal and proper boundary, and that neither errors of law nor of fact, made in a case within the jurisdiction of said courts could be brought up for review by this court under writ of *certiorari,* issued by said court. This decision was in accordance with the construction of art. IV., section 4, of the constitution given by the Supreme Court in the case of the *State ex rel. Wallace* v. *Hayne and Mackey* (8 *S. C.*, 368), in which it was held, that while the power of the Supreme Court, in reference to certain writs named in the constitution, to wit: injunctions, *mandamus,* &c., was the same as it existed at common law when the constitution was adopted, yet with reference to other original and remedial writs not named, as *certiorari,* its power was limited by the words, "as may be necessary to give it general supervisory control of all other courts in the State;" and in the case of *Ex parte Childs, supra,* these words were construed as limiting the power of this court in such writs to the supervising of the juris-

diction of the other courts, and not to the correction of either errors of law or fact made therein, the powers of this court as to errors of fact and law being confined, under the constitution, to appellate cases in chancery, and to the correction of errors of law under such regulations as the general assembly may prescribe. And no regulations having been prescribed by the general assembly by which the errors of inferior tribunals can be corrected through the medium of *certiorari*, it followed, as McIver, A. J., said in delivering the opinion, that such errors could not be so corrected by this court. "And, therefore, however it may be as to the Court of Common Pleas, this court cannot issue a writ of *certiorari* as a substitute for a writ of error."

The case of *Ex parte Childs*, however, did not decide that the Court of Common Pleas in *certiorari* was confined to jurisdictional errors, as is the Supreme Court. The general question as to the office of *certiorari*, it is true, was somewhat discussed, but as to the power of the Court of Common Pleas thereunder, there was no positive adjudication, because that question was not before the court; and therefore, as will be seen from the extract above, it was left open. This question, however, has been before our court in at least three cases. *State* v. *Senft & Prioleau*, 2 *Hill*, 367; *State* v. *Steuart*, 5 *Strob.*, 29; and *Cooper* v. *Stocker*, 9 *Rich.*, 292; in each of which it was held, that while the writ of *certiorari* could not be regarded as a substitute for an appeal, and while errors of fact could not be reviewed thereunder, yet that the Court of Common Pleas might review errors of law, although not jurisdictional in their nature, when the record had been brought up by the writ.

It may be regarded as somewhat of an anomaly that the Court of Common Pleas should have greater power under the writ of *certiorari* than the Supreme Court, but yet such is the law under the cases *supra;* and besides, when article IV., section 15, of the constitution, in which power is conferred upon the Court of Common Pleas to issue these writs, is compared with section 4, of article IV., conferring this power on the Supreme Court, it would seem that the framers of the constitution had in view this difference. In the first, it is declared that "the Court of Common Pleas shall have power to issue writs of *mandamus*, prohibition, and *scire*

*facias*, and all other writs which may be necessary for carrying
their powers fully into effect." In the second, that the Supreme
Court "shall always have power to issue, * * and such other
original and remedial writs as may be necessary to give it general
supervisory control over all other courts in the State." Why this
difference in the terms employed, but to show a difference in the
powers conferred? And that the Supreme Court has none of the
powers of a writ of error, for the correction of errors at law under
a *certiorari*, is made still more plain by the fact, as already stated,
that the constitution further provided that such errors of law
could be corrected by said court only under such regulations as
the general assembly might provide. These regulations have
been provided, and they do not include proceeding by *certiorari*.

So that we conclude that there was no error on the part of the
Circuit Judge in looking into all assigned errors of questions of
law involved, whether jurisdictional or otherwise, there being no
appeal allowed in such cases, the ordinary mode of correcting such
errors. *State ex rel. McCall* v. *Cohen*, 13 *S. C.*, 198.

It is contended, second, that the trial justice had jurisdiction of
the subject matter, and of the person of the respondent, and such
being the case that all questions arising were for him, and without
appeal—that his decision was final, subject to no review. So far
as any errors of law are concerned, what we have said above dis-
poses of this question. But the position of the appellant is correct
as to the facts. These cannot be reviewed either by *certiorari* or
by any other process; whether wisely so or not, they are final with
the inferior court. Now, was the order of the Circuit Judge based
upon a question of fact, or was it upon a question of law? And
if upon the latter, did the judge err in his holding? The pro-
ceeding under which the trial justice acted, was founded upon
section 1818 of General Statutes, which provides for the ejectment
of tenants at will and domestic servants. It is not claimed that
the respondent was a domestic servant, but the trial justice held
that he was a tenant at will, and therefore ordered that he be
ejected. The Circuit Judge holds that respondent was not a
tenant at will, and therefore that the trial justice had no jurisdic-
tion.

The appellant relies upon *O'Neale* v. *Fickling* (10 *S. C.*, 302),

in which the court said: "That it was for the trial justice to ascertain by proofs whether the relation of landlord and tenant existed between the parties, and, if a tenancy existed, whether it was of the character that the statute required, and if the trial justice arrived at an erroneous conclusion, that is no ground for prohibition." That case was a case of ejectment, like this, of an alleged tenant at will. The question raised by the defendant was title, and the trial justice having disregarded this defence, a writ in prohibition was sought, mainly on the ground that the question of title being raised, the jurisdiction of the trial justice was ousted. The court held that the proceeding before the trial justice not being an action, the defence of title did not oust jurisdiction, under section 78 of the Code. It does not appear in the case upon what evidence the tenancy rested. It is true, that one of the exceptions claimed, "that his honor erred in refusing the prohibition, when the fact appeared on the face of the return, that the relator was not a tenant at will," and it was in reply to this exception, that the court used the language quoted above, and which is relied on by appellants here.

We do not think that this concludes this case, for several reasons. First, the case of *O'Neale* v. *Fickling* was a case of prohibition, and not *certiorari*, and the court in that case held, that the only ground of prohibition is want of jurisdiction—that it can "be properly asked only on the ground that the issue was placed by law beyond the jurisdiction of the trial justice to determine the truth or falsehood of the allegations contained therein." While in reference to *certiorari*, the cases referred to above have distinctly determined that questions of law other than jurisdictional may be considered thereunder. See *Leonard's Case*, 3 *Rich.*, 113; *Cooper* v. *Stocker*, 9 *Rich.*, 292; in both of which cases it was held, that errors of judgment in a point of law by an inferior court could not be reviewed under prohibition, the remedy being a writ of *certiorari*. See, also, *State ex rel. Richland County* v. *Columbia*, 17 *S. C.*, 82. Second. It does not appear, in that case, but that the tenancy at will was entirely a question of fact. If so, the ruling of the court was in accordance with the cases *supra*, even in cases of *certiorari*, as it is nowhere contended that the facts can be reviewed in such proceedings.

In the case before the court, whether the respondent was a tenant at will, it is true, was the main question, but this question did not depend upon the evidence of facts, the truth or falsehood of which had to be determined; but it depended upon the construction of a certain agreement between the parties, which was before the court.  This was a question of law, and therefore subject to review.  We think, therefore, that the Circuit Judge was not bound by the judgment of the trial justice as to the construction of this agreement, as he would have been upon a mere finding of a fact, and that he had the right to construe it for himself. We think further, that his construction was the correct one, and that there did not exist such a relation of tenancy at will between these parties as gave jurisdiction to the trial justice to eject respondent under section 1818, General Statutes.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.